**ROBERT G. CLYNE (RC-2987)**
**JAMES A. SAVILLE, JR. (JS-4835)**
*HILL RIVKINS & HAYDEN LLP*
Attorneys for Plaintiff
INDUSTRIAL MARITIME CARRIERS
(BAHAMAS), INC. and INTERMARINE, INC.

924 US Highway 9 South
South Amboy, New Jersey 08879-3313
(732) 838-0300

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
INDUSTRIAL MARITIME CARRIERS                    :
(BAHAMAS), INC. and INTERMARINE, INC.           :     Index No.: 06 cv ____ (   )
                                                :
          Plaintiffs,                           :
                                                :
-against -                                      :     **COMPLAINT**
                                                :
THOMAS MILLER (AMERICAS), INC. and              :
THOMAS MILLER (MIAMI), INC.                     :
                                                :
          Defendants.                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiffs, Industrial Maritime Carriers (Bahamas), Inc. and Intermarine, Inc., by and through their attorneys, Hill Rivkins & Hayden LLP, as and for their complaint against the above-named defendants allege upon information and belief as follows:

**PARTIES**

1. At and during all material times hereinafter mentioned, plaintiff, Industrial Maritime Carriers (Bahamas), Inc. ("IMB"), was and now is a corporation organized and existing under the laws of the Bahamas with its principal place of business at 360 Canal Street, New Orleans,

Louisiana and acted as a time charterer of vessels for the carriage of goods by sea for hire, including the M/V INDUSTRIAL BRIDGE and the M/V AMDERMA.

2. At and during all material times hereinafter mentioned, plaintiff Intermarine, Inc. ("Intermarine"), was and now is a corporation organized and existing under the laws of the state of Louisiana with its principal place of business 360 Canal Street, New Orleans, Louisiana and acted as the disclosed general managing agent for IMB.

3. At and during all material times hereinafter mentioned, defendant, Thomas Miller (Americas), Inc. ("TMA"), was and now is a corporation organized and existing under the laws of the state of New Jersey, with its principal place of business at 15 Exchange Place, Suite 1020, Jersey City, New Jersey and acted, and continues to act, as the general manager of the United Kingdom Mutual Steamship Assurance Association (Bermudas) Limited ("UK Club") and the United Kingdom Freight, Demurrage and Defence Association Limited ("UK Defence Club"),for the benefit of members of the UK Club and UK Defence Club in North America, which included IMB and Intermarine.

4. At and during all material times hereinafter mentioned, defendant, Thomas Miller (Miami), Inc. ("TMM"), was and now is a corporation organized and existing under the laws of the State of Florida with its principal place of business at c/o TMA, 15 Exchange Place, Suite 1020, Jersey City, New Jersey and acted as agent for TMA, the successor in interest of TMM. TMM was responsible for handling claims for members of the UK Club and UK Defence Club

located in the southern United States, which included IMB and Intermarine. (Defendants TMA and TMM are hereafter collectively referred to herein as "Thomas Miller").

## SUBJECT MATTER JURISDICTION

5. The subject matter jurisdiction of this Court is invoked under 28 U.S.C. § 1332 as there is complete diversity among the plaintiffs and defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## ALLEGATIONS COMMON TO ALL COUNTS

6. At and during all material times hereinafter mentioned, Intermarine and IMB had entered with the UK Club and UK Defence Club certain vessels, including the M/V AMDERMA. Among its other duties and responsibilities, Thomas Miller was obligated to manage the insurance with respect to Intermarine and IMB entered vessels, including the handling of all claims.

7. On June 2, 1997, IMB, the time charterer of the M/V INDUSTRIAL BRIDGE, entered into a contract of carriage with Centrans International Corporation acting as agent for Daewoo Corporation to carry aboard the M/V INDUSTRIAL BRIDGE a cargo of construction equipment from Masan, Korea, to Derince, Turkey.

8. The aforementioned cargo of construction equipment was loaded aboard the M/V INDUSTRIAL BRIDGE on or about June 16, 1997, and was subsequently discharged at Derince on or about July 17, 1997.

9. On July 3, 1997, IMB entered into a second contract with Centrans International Corporation acting as agent for Daewoo Corporation to carry an additional cargo of construction equipment from Masan, Korea, to Derince, Turkey, this time aboard the IMB chartered vessel, the M/V AMDERMA.

10. This second cargo of construction equipment was loaded aboard the M/V AMDERMA on or about July 27, 1997, and was discharged at Derince, Turkey, on or about August 23, 1997.

11. On or about July 29, 1998, Intermarine received from its local husbandry agent in Turkey, Barwil Universal Denizcilik ve Tasimacilik ("Barwil"), certain legal papers referred to as a "payment order" that had been filed by Daewoo Corporation in connection with the alleged loss of cargo carried aboard the M/V INDUSTRIAL BRIDGE.

12. In accordance with its established practice, Intermarine immediately forwarded a copy of the payment order to Thomas Miller for handling.

13. On or about July 30, 1998, Thomas Miller instructed its local correspondent in Istanbul, Turkey, Vistan Mumessillik ve Ticant A.S. ("Vistan"), to investigate the INDUSTRIAL BRIDGE matter, appoint a lawyer if necessary, and advise what action should be taken.

14. Vistan did investigate the matter and recommended on July 31, 1998, the appointment of counsel to file an objection to the payment order as such an objection had to be filed within seven days in accordance with Turkish law.

15. On July 31, 1998, Thomas Miller approved the recommendation of counsel suggested by its correspondent, Vistan.

16. Unbeknownst to plaintiffs, Turkish counsel appointed by Vistan allegedly received a second payment order filed by Daewoo Corporation against IMB and Intermarine, this one alleging loss of the cargo carried aboard the M/V AMDERMA, a vessel entered with the UK Club and UK Defence Club.

17. After objections were allegedly filed to both the INDUSTRIAL BRIDGE and AMDERMA payment orders by counsel appointed by Vistan, Daewoo Corporation instituted two separate lawsuits in the Third Commercial Court of Kadikoy, Istanbul. The first lawsuit, styled number 1998/1419, alleged loss of cargo carried aboard the INDUSTRIAL BRIDGE and named as defendants, among others, Intermarine and IMB. Unbeknownst to plaintiff, the second suit, styled number 1998/1420, alleged loss of cargo carried aboard the M/V AMDERMA and also named as defendants, among others, Intermarine and IMB.

18. On or about December 4, 1998, Vistan forwarded the information received about the lawsuits to Thomas Miller, specifically advising them that Intermarine and IMB had been named

5

as defendants in each of the suits, one involving the M/V INDUSTRIAL BRIDGE and one involving the M/V AMDERMA.

19. On or about December 22, 1998, Vistan forwarded translated copies of the actual suits, including the AMDERMA suit, to Thomas Miller.

20. Although the M/V AMDERMA was an entered vessel, Thomas Miller gave no instructions to Vistan regarding the handling of the AMDERMA claim nor did Thomas Miller notify its members, Intermarine or IMB, of the existence of the AMDERMA lawsuit.

21. Vistan repeatedly asked for instructions from Thomas Miller on the handling of the INDUSTRIAL BRIDGE and the AMDERMA cases. Finally, on February 24, 1999, Thomas Miller advised Vistan that the INDUSTRIAL BRIDGE was not an entered vessel and that the pending lawsuit should be referred to another P&I club. Thomas Miller continued to give no advice on the handling of the AMDERMA claim, even though the M/V AMDERMA was a vessel entered with the UK Club and UK Defence Club.

22. On or about November 26, 2002, Intermarine and IMB received notification for the first time that they had both been named as defendants in a lawsuit filed in Turkey by the receivers of the cargo carried aboard the M/V AMDERMA. On or about June 3, 2003, the Third Commercial Court of Kadikoy, Istanbul, following a hearing on May 27, 2003, entered judgment against Intermarine and IMB in the AMDERMA suit in the amount of $2,906,000.00, plus interest of 9.3% running from August 24, 1998, and costs.

23. Before receiving the referenced notification, at no time was IMB or Intermarine aware that they were parties to a lawsuit based upon the call of the M/V AMDERMA at Derince, Turkey, even though Thomas Miller had been advised of the existence of this suit on December 4, 1998 and had been provided with a copy of the suit on December 22, 1998.

24. It was not until June 14, 2006, that plaintiffs learned that Thomas Miller had been contemporaneously provided with the notice of and documentation related to the AMDERMA claim and lawsuit and nevertheless failed to notify plaintiffs of the existence of the foregoing.

25. Although Thomas Miller and/or its affiliated companies act as Managers for the UK Club and the UK Defence Club, the UK Club and the UK Defence Club have steadfastly refused to honor plaintiffs' claims for indemnity with respect to the AMDERMA lawsuit.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Negligence)

26. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 25 as if set forth herein at length.

27. Thomas Miller had the duty and obligation to notify plaintiffs as members of the UK Club and UK Defence Club of the existence of the AMDERMA claim and lawsuit in a prompt and timely manner so that an effective defense could be presented, and in order that plaintiffs could notify other potentially interested parties as to an actual lawsuit and to otherwise protect plaintiffs' interests vis-à-vis the UK Club and the UK Defense Club.

28. Despite its actual knowledge of the AMDERMA claim and lawsuit, Thomas Miller failed to notify plaintiffs of the existence of the AMDERMA lawsuit precluding plaintiffs from raising effective defenses in the Turkish litigation and not allowing the plaintiffs to notify other potentially interested parties as to an actual lawsuit in Turkey against plaintiffs.

29. As a direct and proximate result of the Thomas Miller's acts and omissions, a judgment and costs in excess of $2,900,000.00 was entered against plaintiffs.

30. By reason of the foregoing, Thomas Miller was careless, reckless and negligent in carrying out its duties and obligations to plaintiffs and was otherwise at fault.

31. By reason of the premises, plaintiffs have sustained damages as nearly as same can now be estimated, no part of which has been paid, although duly demanded, in an amount in excess $3,000,000.00.

## AS AND FOR
## A SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)

32. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 31 as if set forth herein at length.

33. Thomas Miller had a fiduciary duty to notify plaintiffs as members of the UK Club and UK Defense Club of the existence of the AMDERMA claim and lawsuit in a prompt and

timely manner in order that an appropriate and effective defense could be presented, or so plaintiffs could have otherwise acted to protect their interests and Thomas Miller had a further duty to protect plaintiffs' interests vis-à-vis the UK P & I Club and UK Defense Club.

34. Thomas Miller had actual knowledge of the AMDERMA claim and lawsuit, yet failed to notify plaintiffs of its existence such that an ineffective defense was presented in the AMDERMA litigation, such that timely notice could not be provided to other potentially interested parties and Thomas Miller further failed to protect plaintiffs' interests vis-à-vis the UK P & I Club and UK Defence Club.

35. By reason of the foregoing, Thomas Miller breached its fiduciary duties and obligations to plaintiffs and was otherwise at fault.

36. By reason of the premises, plaintiffs have sustained damages as nearly as same can now be estimated, no part of which has been paid, although duly demanded, in an amount in excess $3,000,000.00.

**AS AND FOR
A THIRD CAUSE OF ACTION**
(Tortious Interference with Contract)

37. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 36 as if set forth herein at length.

38. At all materials times, plaintiffs were members of the UK P & I Club and UK Defence Club, and also maintained a Deviation policy of insurance with certain Lloyd's Underwriters. Under the Rules of the UK Club, the UK Defence Club and plaintiffs' Deviation policy, members/insureds are required to promptly notify them of any claims or lawsuits.

39. Thomas Miller had a duty to notify plaintiffs as members of the UK Club and UK Defense Club of the existence of the AMDERMA claim and lawsuit and to protect its interests vis-à-vis the UK Club and UK Defence Club in a prompt and timely manner and failed to carry out these duties and obligations in a prompt and timely fashion.

40. As a direct and proximate result of Thomas Miller's failure to notify of the existence of the AMDERMA claim and lawsuit, Certain Underwriters at Lloyd's denied coverage to plaintiffs claiming late notice of claim. Further, the UK Club and UK Defence Club have refused to indemnify plaintiffs for the amounts paid satisfaction of the AMDERMA claim and for other losses sustained by plaintiffs.

41. To the extent that the positions taken by the aforementioned insurers have any validity, Thomas Miller has tortuously interfered with plaintiffs' right of indemnification from the UK Club, the UK Defence Club, and Deviation Insurers. By reason of the premises, plaintiffs have sustained damages as nearly as same can now be estimated, no part of which has been paid, although duly demanded, in an amount in excess of $3,000,000.00.

## AS AND FOR A FOURTH
## CAUSE OF ACTION AGAINST ALL DEFENDANTS
(Joint and Several Liability)

42. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 41 as if set forth herein at length.

43. All of the defendants herein acted jointly, concurrently and successively in the commission of the above-mentioned breaches and are otherwise jointly and severally liable for plaintiffs' damages.

44. By reason of the premises, plaintiffs have sustained damages as nearly as same can now be estimated, no part of which has been paid, although duly demanded, in an amount in excess of $3,000,000.

*WHEREFORE,* Plaintiffs pray:

1. For a trial by jury on all counts of the Complaint.

2. That process in due form of law according to the practice of this Court may issue against the Defendants.

3. That a decree may be entered in favor of Plaintiffs and against Defendants on the First Cause of Action in the amount of Plaintiff's damages, together with interest and costs.

4. That a decree may be entered in favor of Plaintiffs and against Defendants on the Second Cause of Action in the amount of Plaintiff's damages, together with interest and costs.

5. That a decree may be entered in favor of Plaintiffs and against Defendants on the Third Cause of Action in the amount of Plaintiff's damages, together with interest and costs.

6. That a decree may be entered in favor of Plaintiffs and against Defendants on the Fourth Cause of Action in the amount of Plaintiff's damages, together with interest and costs.

7. Plaintiff further prays for such other, further and different relief as to this Court may deem just and proper in the premises.


Dated: South Amboy, New Jersey
       November 22, 2006

                      HILL RIVKINS & HAYDEN LLP
                      Attorneys for Plaintiff,

By: _____
       Robert G. Clyne (RC-2987)
       James A. Saville, Jr. (JS-4835)

       924 US Highway 9 South
       South Amboy, New Jersey 08879-3313
       Tele: 732-838-0300